Summers, J.
That part of the act of 1898 above quoted is copied almost literally from the act of the legislature of New York and, but that it is thought proper to point out the difference between the statute under consideration and the statute passed upon in Edson et al. v. Crangle et al., 62 Ohio St., 49, its validity might be rested, without more, upon the authority of Lawton v. Steele, 119 N. Y., 226; Lawton v. Steele, 152 U. S., 133.
In the ease in the Supreme Court of the United States it is decided: “It is within the power of a state to preserve from extinction fisheries in waters within its jurisdiction, by prohibiting exhaustive methods of fishing, or the use of such destructive instruments as are likely to result in the extermination of the young as well as the mature fish.
“The provision in the statutes of New York, c. 591 of the laws of 1880, as amended by c. 317 of the laws of 1883, that nets set or maintained upon waters of the state, or on the shores of our islands in such waters, in violation of the statutes of the state enacted for the protection of fish, may be summarily destroyed by any person, and that it shall be the duty of certain officers to abate, remove, and forthwith destroy them, and that no action for damage shall lie or be maintained against any person for or on account of such seizure or destruction, is a lawful *201 exercise of the police power of the state, and does not deprive the citizen of his property without due-process of law, in violation of the provision of the-constitution of the United States.”
This disposes of the contention that the act violates the constitution of the United States on the-ground that it deprives a citizen of his property without due process of law; and also of the same contention respecting the constitution of Ohio, unless there-is a difference, and there is not (Cooley’s Constitutional Limitations, 47, 431) in the two instruments, respecting due process of law.
What is said in Railroad Co. v. Keith et al., 67 Ohio St., 279, to the effect that the provision of our hill of rights respecting due course of law was-adopted to get rid of the imperfections and injustice-of the common law, seems to have been said inadvertently. In Weimer v. Bunbury, 30 Mich., 201, Cooley, J., says: ‘ ‘ The truth is that hills of rights-in the American constitutions have not been drafted for the introduction of new law, hut to secure old principles against abrogation or violation. They are conservatory instruments rather than reformatory. ”
And in Lawton v. Steele, 119 N. Y., 226, 237, Andrews, J., says: “These authorities sufficiently establish the- proposition that the constitutional guaranty does not take away the common law right of abatement of nuisances by summary proceedings, without judicial trial or process.” Again on page 238 he says: “But as the legislature may declare nuisances, it may also, where the nuisance is physical and tangible, direct its summary abatement.by executive officers,, without the intervention of judicial proceedings, in cases analogous to those where- *202 the remedy by summary abatement existed at common law. ’ ’
The criticism of the opinion in Lawton v. Steele, 152 U. S., 133, that it upholds a statute admittedly violative of the constitution by applying the maxim iíDe minimis non curat lex” is, it seems to me, based entirely upon a misconception. The learned justice says the constitutionality of the legislation was sustained by the court of appeals of New York upon the ground of its being a lawful exercise of the police power of the state, and. speaking of the exercise of the power, he says: “To justify the state in thus interposing its authority in behalf of the public, it must appear, first that the interests of the public generally,'as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals;” and having shown that the preservation of game and fish is within the police power he proceeds to- consider whether the act, in that it provided that nets used in violation of its provisions are public nuisances and may be summarily destroyed by any person, will bear the test of the second rule, namely, “that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.” In the determination of that question the value of the property was a very proper matter for consideration.
In Edson et al. v. Crangle et al., 62 Ohio St., 49, the statute under consideration provided that any nets set in violation of its provisions should be confiscated wherever found and sold to the highest bidder and the proceeds placed to the credit of the fish and *203 :game fund. The statute provided for a seizure and -an appropriation of the nets, hut failed to provide any legal procedure whereby they might he adjudged to be confiscated and on that ground the statute was held void as not providing due process of law, and the judge writing the opinion expressly pointed out that the statute did not declare the nets a public nuisance to he summarily abated.
Being of the opinion that the act of 1898 is not unconstitutional on the grounds upon which the ■question is raised it is unnecessary to consider the ■constitutionality of the act of 1902, or the other ■ questions raised by the answer.
Judgment reversed and judgment for plaintiff in ■error.
Spear, C. J., Davis, Shauck and Crew, JJ., concur.